---

### C. NOEL LEGH & CO., Limited, v. STITZINGER et al.

(District Court, E. D. Pennsylvania. July 13, 1921.)

No. 8046.

Sales ☞172—Conditions requiring delivery of lumber by seller held not fulfilled.

A contract, evidenced by correspondence, by which defendants agreed to sell and deliver in Liverpool certain lumber within 60 days, providing ocean rates not exceeding $1 per 100 pounds could be secured, or plaintiff would consent to absorb the excess, if higher rates were paid, but expressly providing that, if such rates could not be obtained, defendants were not required to hold the lumber and the contract should be considered canceled, *held* not extended as to time by further correspondence, and, the conditions for shipment not having been met within the time, defendants *held* not chargeable with breach of contract for refusal to ship thereafter.

At Law. Action by C. Noel Legh & Co., Limited, against George G. Stitzinger and others, trading as G. G. Stitzinger & Co. On affidavit of defense raising question of law. Judgment for defendants.

Carr & Steinmetz, of Philadelphia, Pa., for plaintiff.
John J. Sullivan, of Philadelphia, Pa., for defendants.

THOMPSON, District Judge. The plaintiff declares upon an oral contract entered into with the defendants the early part of April, 1919, and confirmation thereof in writing on April 21, 1919, for the sale and delivery to the plaintiff at Liverpool, England, of 26 carloads of lumber of various sizes, grades, and kinds, and at various prices. The terms of the contract as set out in the defendants' confirmatory letter are as follows:

"The sale which was made to you at Philadelphia, Pa., is as follows:

| | |
|---|---|
| 5 cars 4/4 No. 2 com. white oak | at $ 83.00 |
| 1 car 4/4 wormy white oak | at 92.00 |
| 10 cars 4/4 No. 1 com. white oak | at 100.00 |
| 5 cars 4/4 1's and 2's white oak | at 125.00 |
| 5 cars 4/4 1's and 2's chestnut | at 93.00 |

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"All delivered to Liverpool, England, less 2½ per cent. on net f. o. b. mill price and 4 per cent. commission on the gross amount of invoice terms, sight draft attached to B/L for full net amount of invoice. You to pay the insurance on the lumber, shipment to be made within 60 days from May 1st, providing we could secure ocean rate not to exceed $1.00 per 100 lbs. Shipments may be made at a higher rate, with your consent only, and you to absorb the rate in excess of $1.00 per 100 lbs.

"It must be understood, however, that unless there is a likelihood of being able to secure the rate specified above, that we shall not be expected to hold the stock for you, and in that event the order is to be considered canceled."

On May 21, 1919, the defendants wrote to the plaintiff's managing director at New York as follows:

"New Castle, Pa., May 21, 1919.

"Mr. F. Hooton, Pennsylvania Hotel, New York, N. Y.—Dear Sir: We received your night letter reading as follows: 'Letter received. Yes other shippers have just booked at dollar fifty five through Baltimore. Telegraph what quantity first and seconds and number one oak you have ready for immediate shipment against our order and will write you instructions. Pennsylvania Hotel, New York.'

"We are not wiring you for the reason that we want to go into detail more fully than we can by wire.

"We have made a great many inquiries for space and rates. The B. & O. have not been able to encourage us any for shipment from Baltimore. The latest quotation we have was from Furness-Withy & Co., who quote us a rate of $1.90 per 100 lbs., freight to be prepaid. Their letter dated the 19th we are inclosing herein.

"Now, with reference to the stock, desire to say that we sold this for shipment in May and June and delivered prices were based on ocean rate of $1.00 per 100 lbs. To get space and a rate that we thought would be satisfactory to you seemed practically out of the question, consequently we were under the impression that you would not be able to take the stock and we were probably a trifle hasty in disposing of a few cars of the material which we had intended to apply on your order.

"About the only stock we have now which is dry enough to ship is one car 4/4 No. 1 common white oak, and five cars No. 2 common white oak. If we could secure space and you are willing to absorb the difference in ocean rate, of course we will be pleased to ship this.

"Your commission, however, will apply to the gross amount of invoice, computed on an ocean rate of $1.00 per 100 lbs.

"On account of extremely wet weather, we have not been manufacturing the amount of stock anticipated, neither has the stock that is in pile been drying very rapidly, both of which had a tendency to shorten our supply.

"If it will suit you as well, we would prefer to hold the order up for the time being, but will be guided by your wishes in the matter.

"Yours truly        [Signed]    G. G. Stitzinger & Co., G. G. S."

Replying to the above letter, the plaintiff, by its managing director, wrote the defendants as follows:

"May 23, 1919.

"Messrs. G. G. Stitzinger & Co., New Castle, Pa.—Dear Sir: I was pleased to receive your letter of the 21st. inst. and note carefully all you state, and are rather sorry that you have disposed of some of the stock purchased by us. I note that it would suit you better to hold the stock up for the time being, and would certainly like to meet your wishes all we can. We will therefore leave matters as they are say for another month, when we shall be pleased if you will advise us what stock you have on hand against our order, and we will let you know exactly what to do.

"Regarding shipment we would just like to point out that our friends the C. S. Powell Lumber Co., 1270 Broadway, New York, inform us that it is possible they will obtain space for a good bunch out of Norfolk in the near future,

in which they have promised to give us some of this space, and we would like you to take this letter as an authority to ship any of your goods to them at Norfolk for our account, and satisfactory arrangements will be made regarding payment. Probably Messrs. Powell would cable us at Liverpool and ask us to put up a bank credit, so that they could pay you the amount necessary, equivalent to what the stock would cost on a cif basis as per contracts between us.

"Meanwhile, I remain

"Yours sincerely,                                    [Signed] F. Hooton."

It is averred in the statement of claim that in the above letter of May 23, 1919, the plaintiff agreed to extend the time for shipment one month, or until August 1, 1919, and that it thereupon became the duty of the defendants to ship the lumber not later than August 1, 1919. That the plaintiff, desiring to remove any cause for delay by relieving the defendants of all responsibility in procuring a freight rate, made an agreement with the C. S. Powell Lumber Company to allot to the plaintiff space reserved for its lumber on a steamship or steamships to sail for England, and that the plaintiff on July 1, 1919, sent the defendants a cablegram in code, and confirmed it in a letter of the same date to the defendants, reading as follows:

"Liverpool, July 1, 1919.

"Gentlemen: We received a cable from our friends Messrs. C. S. Powell Lumber Company, New York, indicating that they had an opportunity of chartering a United States Shipping Board vessel at a low rate of freight out of Norfolk, Va., and knowing that the writer when in the States had purchased large blocks of lumber from different friends, Messrs. Powell cabled to us, asking if we would like to get in touch with our friends and authorize them to ship out our lumber on this space and take advantage of the low freight offering, and we lost no time in cabling you as follows: 'Will you communicate with Powell Lumber Co. New York reference lumber on order they will arrange freight we give you authority to deliver to their instructions.'

"Of course, as soon as ever you have delivered the goods to Messrs. Powell's mills, and they indicate to us that everything is in order, we will promptly protect your drafts on this side as usual. We certainly hope that you will be able to arrange matters satisfactorily with Messrs. Powell, so that we can take advantage of this freight space, which will be in our mutual interests. Meanwhile we await hearing from you, as also Messrs. Powell, at the earliest possible as to what has been done, and remain

"Yours very truly,                    [Signed] C. Noel Legh & Co., Inc."

Upon July 10, 1919, the defendants wrote the plaintiff, refusing to deliver the lumber. The letter read as follows:

"New Castle, July 10, 1919.

"Messrs. C. Noel Legh & Co., Ltd., Liverpool—Dear Sirs: We received your message in due time, but have never gotten it translated until to-day. There was no one here who could help us out, then we sent the message to Ellwood City, where we thought it could be translated, but finally found that it could be translated at Beaver Falls, Pa., by the Union Drawn Steel Company, and so just now are able to reply. The message, when translated, read as follows: 'Will you communicate with Powell Lumber Co. New York reference lumber on order they will arrange freight I will give you authority to deliver to their instructions.'

"As stated in a previous letter to you, the conditions attached to this purchase were peculiarly indefinite. They were providing you could get a rate of $1.00 per 100 lbs. or near that rate within about four to six weeks of the date of our meeting you in Philadelphia. We followed the matter up very closely with a view to arranging for some rates which would be

something near your idea, but for the reason that it looked as though we would not be able to even touch it, we disposed of the stock that we had, and on account of labor troubles and other matters beyond our control we have not been able to accumulate as much stock in any one item as you were expecting on this purchase. We really intended to go on the market and purchase some of the stock at neighboring mills, but not being able to ship precluded our buying until later on, when the markets began advancing here at a tremendous rate, and of course at this time we could not buy and cover on it for anything like the prices which you were to pay. We manufacture some oak, but do not get a very large amount of No. 1 common and better, and at this time do not have a full car of green or dry stock available; so under the conditions we believe that we might as well say that it will be an impossibility for us to furnish this material until conditions change somewhat in this country. We regret this exceedingly, as we would have liked very much to have done some business with you, but assure you the only reason we have not been able to handle this order was the freight rate question, which prevented us doing so.

"Yours truly,          . [Signed] G. G. Stitzinger & Co., G. G. S."

The plaintiff claims damages for breach of contract in the sum of $19,395, alleged to represent the difference between the contract price and the market price at Liverpool on August 1, 1919, with interest from that date. The affidavit of defense raises the question whether the letter of April 21, 1919, confirming the oral contract, constitutes such a "note or memorandum in writing of the contract or sale signed by the party to be charged," as to be enforceable under section 4 of the Uniform Sales Act of Pennsylvania of May 19, 1915 (P. L. 543; Pa. St. 1920, § 19652).

The letter in question sets forth the quantity and kinds of lumber, the prices, the place of delivery, the terms of payment, and the time within which shipment was to be made, namely, within 60 days from May 1, 1919, with, however, the·proviso that the defendant can secure a freight rate not to exceed $1 per hundred, shipments to be made at a higher rate with the plaintiff's consent only, they to absorb the rate in excess of $1 per hundred. It is expressly stated in the letter that it must be understood, however, that, unless there is a likelihood of being able to secure the rate specified, the defendant will not be expected to hold the stock for the plaintiff, and in that event the order is to be considered canceled.

The letter contains sufficient to support a suit for a breach of its terms, if the plaintiff's demand for delivery was made in accordance with those terms, or in accordance with modified terms, if there was a modification of its terms agreed to by the parties. It is contended by the plaintiff that the defendants' request in its letter of May 21 and the plaintiff's reply of May 23 constituted an agreement to extend the time for delivery for one month to August 1. This contention will be discussed hereafter.

In order for the plaintiff to recover upon the contract, it must appear that there was a likelihood of the defendants being able to secure a rate not exceeding $1 per hundred, or that the plaintiff consented to shipments at a higher rate. There is no averment in the statement of claim which supports any other variation of the terms of the contract, except as to the extension of time for deliveries. The language in the defendants' letter of May 21 bearing on that question is as follows:

"If it will suit you as well, we would prefer to hold the order up for the time being, but will be guided by your wishes in the matter."

In reply thereto, in the plaintiff's letter of May 23, it says:

"I note that it would suit you better to hold the stock up for the time being, and would certainly like to meet your wishes all we can. We will therefore leave matters as they are say for another month, when we shall be pleased if you will advise us what stock you have on hand against our order, and we will let you know exactly what to expect."

This language must be construed in connection with the plaintiff's night letter requesting the defendants to telegraph what quantity firsts and seconds and No. 1 oak they have ready for immediate shipment against the plaintiff's order, concerning which it states it will write the defendants instructions. The defendants' request, therefore, was to hold up, for the time being the order for immediate shipment under the contract of April 21, and the plaintiff granted that request by leaving matters as they were without any orders against the contract for another month from May 23, and at that time the defendants were to advise the plaintiff what stock they had on hand against the order, when the plaintiff would let them know exactly what to do. There is nothing in this correspondence, therefore, extending the time of deliveries beyond the 60 days running from May 1, and for all that appears in the statement of claim there was no communication between the parties again until July 1, 1919, when the time for delivery had expired.

Coming down to the plaintiff's code cablegram and letter of July 1, 1919, we have a new proposal from the plaintiff, under the apparent impression that it had an additional month in which to demand deliveries, requesting delivery under a proposed arrangement with the Powell Lumber Company to give the plaintiffs freight space on vessels at their disposal. Assuming that the suggested shipment was, as to rates, in accordance with the defendants' letter of April 21, 1919, that is, at a higher rate than $1 per hundred, with plaintiff's consent, the defendants in that letter had agreed to make delivery at Liverpool, England, with a sight draft attached to the bill of lading, for the full net amount of the invoice.

The proposal in the letter of July 1 was that the lumber be delivered to the Powell Lumber Company in accordance with the latter's instructions, the plaintiff offering to protect the defendants' draft at Liverpool, but leaving out of consideration the terms of delivery to the carrier with sight draft attached to the bill of lading. The defendants, as they had a right to do, refused to make delivery, stating that in their previous letter the conditions attached to the purchase were "peculiarly indefinite." Under the terms of that letter, the defendants were not to be expected to hold the stock for the plaintiff, and the order was to be considered canceled unless, during the time of the life of the contract, there was a likelihood of their being able to secure the specific rates.

The statement of claim therefore fails in the following particulars: (1) It does not appear that there was a likelihood of securing the specific freight rate within the 60 days from May 1, 1919. (2) It does not appear that the plaintiff consented to a higher rate within the 60 days. (3)

There was no extension of time for shipping beyond the 60 days. (4) The plaintiff's proposal of July 1, 1919, was not in accordance with the terms of the contract, and was not accepted by the defendants.

For the reasons stated, judgment must be entered for the defendants upon the questions of law set out in the affidavit of defense, and it is so ordered.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes